IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

THE GILLETTE COMPANY, BRAUN
GMBH, and GILLETTE COMMERCIAL
OPERATIONS NORTH AMERICA,

    Plaintiffs,

v.                                                  Civil Action No. 04-CV-12391 NMG

SKYVISION, INC., DANE ROBINSON, and
WATER PIK TECHNOLOGIES, INC.,

    Defendants.

---

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR
ALTERNATIVELY FOR CHANGE OF VENUE**

---

Defendants Skyvision, Inc., Dane Robinson and Water Pik Technologies, Inc. ("Defendants"), by and through their undersigned counsel, submit this Memorandum in Support of their Motion to Dismiss or Alternatively for Change of Venue as follows:

**INTRODUCTION**

In the spring of 2004, Defendants learned that Plaintiffs were producing products that potentially infringed Defendants' patents. Accordingly, Defendants contacted Plaintiffs to discuss the possibility of negotiating a licensing agreement. In August, 2004, the parties began open and frank negotiations regarding potential licensing arrangements. From the earliest discussions, Plaintiffs espoused their preference for resolving such matters without litigation, a proposition with which the Defendants wholeheartedly agreed. However, several months into the negotiations and without provocation, justification or the existence of an actual controversy, Plaintiffs filed the instant action. Plaintiffs filed this case for the improper purposes of increasing negotiating leverage and to wrest the proper forum away from Defendants.

The Court should dismiss this action because at the time of filing the parties were engaged in non-confrontational negotiations and no objectively reasonable apprehension of suit existed. Thus, the Court lacks subject matter jurisdiction. The Court should also decline to exercise its discretionary jurisdiction pursuant to the Declaratory Judgment Act and dismiss this case because to retain jurisdiction would reward Plaintiffs' bad faith strategy of claiming to seek an amicable resolution through negotiation while surreptitiously drafting and filing this action to obtain negotiating leverage and to usurp the true plaintiffs' rightful forum. Additionally, the Court should dismiss Defendants Skyvision and Robinson because those defendants have insufficient contacts with Massachusetts to justify the exercise of personal jurisdiction. Finally, in the alternative, the Court should further the interests of justice and negate Plaintiffs' blatant forum shopping by transferring this case to the District of Colorado, where it rightfully belongs and where complete relief can be granted.

## FACTUAL BACKGROUND

This case arises out of several patents relating to mechanical dental flossing devices and apparatus. Specifically Robinson and/or Skyvision are the owners of United States Patents Nos. 5,573,020 (the "'020 patent"), issued on November 12, 1996; 5,787,908, issued on August 4, 1998; and 5,944,033, issued on August 31, 1999 (collectively the "Patents-in-Suit"). Exhibit 1, Declaration of Dane Robinson, at ¶ 2 ("Robinson Dec."). In 1999, Robinson and Skyvision gave Water Pik, Inc., a Delaware corporation with its principal place of business at 1730 East Prospect Road, Fort Collins,[1] Colorado ("Water Pik"),[2] a license to practice the Patents-in-Suit with respect to mechanical flossing devices (with exception to those rotating on an axis that had

---

[1] Fort Collins is located approximately 45 minutes north of Denver and is in the District of Colorado.
[2] Water Pik is a subsidiary corporation of the erroneously sued Water Pik Technologies, Inc. Ex. 2, Tipton Declaration, at ¶ 2.

-2-

previously been licensed to Braun). Exhibit 2, Declaration of Richard D. Tipton at ¶ 3 ("Tipton Dec.").

Prior to the current negotiations, in 1997, Braun had entered into a licensing agreement with Skyvision and Robinson involving a flossing device of a different design than those now in issue. Ex. 1, Robinson Dec., at ¶ 4. This licensing agreement resulted from Robinson and Skyvision's claims that Braun was infringing the '020 patent. Ex. 1, Robinson Dec., at ¶ 3. When Robinson discovered the infringement, he contacted Braun and the parties entered into negotiations for a licensing agreement. Ex. 1, Robinson Dec., at ¶ 3. The parties ultimately resolved the claims in that instance by negotiation, not litigation. Ex. 1, Robinson Dec., at ¶ 4. Thus, the parties have a history of utilizing negotiation and not litigation to resolve patent licensing issues.

In the spring of 2004, Plaintiffs began producing and selling mechanical dental flossing devices. Ex. 2, Tipton Dec., at ¶ 4. Upon discovering this device for sale, Defendants analyzed its components and determined that it potentially infringed one or more of the Patents-in-Suit. Ex. 2, Tipton Dec., at ¶ 5. Accordingly, Robinson contacted Plaintiffs to discuss the possibility of negotiating a license for the Patents-in-Suit with Plaintiffs. Ex. 1, Robinson Dec., at ¶ 8. Given the prior history of amicably resolving licensing issues, Robinson expected that this issue would resolve without litigation. Ex. 1, Robinson Dec., at ¶ 8. The discussions regarding the possibility of licensing commenced in July or August of 2004. Ex. 1, Robinson Dec., at ¶ 8.

From the outset, Plaintiffs' counsel stated his desire to avoid litigation and to seek an extrajudicial resolution of the patent licensing issues. Ex. 1, Robinson Dec. at ¶ 9; Ex. 2, Tipton Dec., at ¶ 10. The negotiations began in earnest on or around October 1, 2004, when Mr. Tipton became the principal contact person for Defendants. Ex. 2, Tipton Dec., at ¶¶ 8-9. At that time

Plaintiffs reiterated their disdain for litigation and Defendants agreed that business negotiations made infinitely more sense than litigation. Ex. 2, Tipton Dec., at ¶ 10. Accordingly, the parties embarked on a course of patent licensing negotiations. During this time, Plaintiffs suggested a pattern for the telephone conferences whereby the parties would first discuss issues related to patent infringement and defenses thereto, and would then discuss the terms of a licensing agreement. Ex. 2, Tipton Dec., at ¶ 9. Between October 1 and November 12 Plaintiffs' counsel, David Howley, and Water Pik's in-house and outside counsel, respectively, Mr. Tipton and Lee Osman, held at least 10 telephone conferences. Ex. 2, Tipton Dec., at ¶ 11.

On October 21 the parties held a conference where Mr. Tipton specifically stated that he did not want these discussions to merely be a fishing expedition for Plaintiffs, and that if they were not serious about pursuing a license Water Pik would seek other legal avenues. Ex. 2, Tipton Dec., at ¶ 11. Mr. Tipton does not believe he expressly threatened litigation then, or at any other time. Ex. 2, Tipton Dec., at ¶ 11. In response, Plaintiffs' counsel reassured Mr. Tipton that when negotiating license agreements Plaintiffs typically take between three and four months to thoroughly explore the patent issues and that Mr. Tipton should not be concerned about the amount of time it was taking. Ex. 2, Tipton Dec., at ¶ 11. In fact, Plaintiffs' counsel again reiterated how Plaintiffs were litigation averse and wanted to pursue a business solution to the issues presented. Ex. 2, Tipton Dec., at ¶ 11.

While Plaintiffs will try to make much of the fact that the parties discussed "infringement," the simple truth is that these were negotiations to determine whether the parties could enter into a licensing agreement regarding patents and, if so, on what terms. Such discussions necessarily involve considerations of infringement. If Plaintiffs had ultimately concluded that their products had no risk of infringement, they could have broken off the

negotiations and flatly refused any licensing terms. That did not happen. On the contrary, the parties negotiated in apparent good faith with no threat of litigation and no adversarial escalation. Ex. 2, Tipton Dec., at ¶ 12.

On November 2, the parties had a telephone conference during which Plaintiffs realized that Water Pik had licensed and was relying on not just the '020 patent, but the entire family of patents. Ex. 2, Tipton Dec., at ¶ 13. On or around November 4, Plaintiffs' counsel, Mr. Tipton, and Mr. Osman held a telephone conference during which Plaintiffs asked for more time to analyze the family of patents. Ex. 2, Tipton Dec., at ¶ 13. In response to Water Pik's concern that its business people thought the parties were close to a license agreement and were hoping to wrap the matter up soon, Mr. Howley stated in a voice mail to Mr. Tipton that Water Pik shouldn't be worried because pursuant to federal law, if the parties ultimately couldn't agree and the case went to litigation Water Pik's damages would go back six years, implying the parties had plenty of time to keep talking. Ex. 2, Tipton Dec., at ¶ 14. During the telephone conversation on November 4, Mr. Tipton referenced Mr. Howley's voice mail and agreed that the parties should keep negotiating. Ex. 2, Tipton Dec., at ¶ 14. Later, the parties went on to discuss whether Plaintiffs would provide sales data to help Water Pik evaluate the reasonableness of any royalty.

On November 10, Mr. Howley and Mr. Osman again discussed the possibility of Plaintiffs providing sales data regarding Plaintiffs' products, as well as the Plaintiffs' latest theory of non-infringement. After initially declining to provide any sales data, Plaintiffs offered to show their "good faith" in the negotiations by sending Neilson sales data to Water Pik.

Unfortunately, only the Defendants appear to have been committed to the parties' resolution to avoid litigation and to negotiate a business solution. Less than 48 hours after this

show of "good faith," and with no communication or indication of any change in the parties' negotiation stance, Plaintiffs filed the instant case. Plaintiffs' decision to draft and file the complaint was totally unexpected as the Defendants had relied on Plaintiffs' previous statements that they wanted to avoid litigation at all costs and the parties were deeply involved in what had been amicable negotiations. Indeed, the feeling of betrayal generated by Plaintiffs' actions nearly derailed the negotiations.

When Mr. Tipton heard that Plaintiffs had filed a complaint, he contacted Mr. Howley and asked him why he had taken such a "low blow" in the middle of negotiations. Ex. 2, Tipton Dec., at ¶ 17. Mr. Howley stated that Plaintiffs felt they had come up with a good argument against infringement and decided to file. Ex. 2, Tipton Dec., at ¶ 17. This confirmed Water Pik's fear that Plaintiffs' strategy all along had been to fish for an argument that they felt strongly about and then file a suit to gain a bargaining advantage. Id.

This was further confirmed during the next negotiations, which were not held until December 15 due to the lack of availability of Plaintiffs' outside counsel. During the December 15 call, Plaintiffs' suggested royalty rate dropped dramatically from the rates they suggested during pre-litigation discussions. Ex. 2, Tipton Dec., at ¶ 18.

Unfortunately, despite Defendants' best efforts, the parties have been unable to reach agreement on the terms of a licensing agreement. As a result, Plaintiffs' litigation forced Defendants to file this motion and their own action in the proper forum, Colorado. On January 14, 2005, Defendants filed suit in the United States Court for the District of Colorado alleging that Plaintiffs' products infringe the Patents-in-Suit.

## ARGUMENT

I. **THE COURT SHOULD DISMISS THIS CASE PURSUANT TO F.R.C.P. 12(b)(1) BECAUSE NO ACTUAL CONTROVERSY EXISTED AT THE TIME PLAINTIFFS FILED THE INSTANT ACTION.**

Plaintiffs filed this case on November 12, 2004, in the midst of ongoing, open, and non-confrontational negotiations regarding the scope of the Patents-in-Suit and the possibility of a licensing agreement. At that time, patent litigation was neither threatened nor imminent. Indeed, Plaintiffs' counsel opened the negotiations with the statement that Plaintiffs preferred to resolve patent licensing issues through business negotiations instead of litigation, a proposition Defendants' supported and agreed with. Because Defendants advised Plaintiffs of their desire to resolve this matter without litigation, and given Plaintiffs' statements to the same effect, no threat of litigation existed at the time of Plaintiffs' filing. Accordingly, there was no actual controversy and this Court lacks subject matter jurisdiction.

Plaintiffs filed this case pursuant to the Declaratory Judgments Act which requires, among other things, that an actual controversy exist at the time the plaintiff files the complaint in order for the court to have jurisdiction. 28 U.S.C. § 2201; Arrowhead Indus. Water, Inc. v. Ecolochem, Inc., 846 F.2d 731, 736 (Fed. Cir. 1988). In patent cases, courts analyze the following two questions to determine whether an actual controversy existed at the time of filing: 1) Was the plaintiff actually producing or prepared to produce an allegedly infringing product?; and 2) Has the patentee's conduct created an objectively reasonable apprehension on the part of the plaintiff that the patentee will initiate suit if the activity continues? EMC Corp. v. Norand Corp. 89 F.3d 807, 811 (Fed. Cir. 1996). It is Plaintiffs' burden to prove that the answer to both of these questions is yes.

To meet its burden, a plaintiff bringing a declaratory judgment action must prove that express charges of infringement existed such that it had a reasonable apprehension of being sued

or that under the totality of the circumstances its choice to commence litigation was based on an objectively reasonable apprehension of litigation. Shell Oil Co. v. Amoco Corp., 970 F.2d 885, 888-89 (Fed. Cir. 1992). Mere negotiations regarding possible licensing and statements that one's activities "fall within," are "covered by," or are "operations under" the patent are insufficient to create an actual controversy. Id. at 889. "When there are proposed or ongoing license negotiations, **a litigation controversy normally does not arise until the negotiations have broken down.**" Phillips Plastics, Corp. v. Kato Hatsojou Kabushiki Kaisha, 57 F.3d 1051, 1053 (Fed. Cir. 1995); see e.g. EMC Corp. v. Norand Corp. 89 F.3d 807, 811 (Fed. Cir. 1996) ("A patentee's offer of a license, without more, is insufficient to establish the predicate for declaratory judgment jurisdiction,... and merely 'proposed or ongoing license negotiations' are likewise insufficient...."); Indium Corp. of America v. Semi-Alloys, Inc., 781 F.2d 879, 884 (Fed. Cir. 1985) ("a mere offer of a license ... taken together with [the parties] litigation history" is not a sufficient basis for a declaratory judgment). "The Declaratory Judgment Act was intended to protect threatened parties, not to drag a non-threatening patentee into court." Shell Oil Co. v. Amoco Corp., 970 F.2d 885, 889 (Fed. Cir. 1992).

Here, Plaintiffs have misused the Declaratory Judgment Act as a vehicle to drag the Defendants into court despite the fact that Defendants engaged in no conduct that could provide an objectively reasonable basis for concluding litigation was imminent. In fact, on numerous occasions throughout the negotiations the parties discussed their mutual disdain for litigation and determined that it would be to their benefit to seek a business, as opposed to judicial, resolution of their licensing issues. Ex. 2, Tipton Dec., at ¶¶ 10, 11, 14. That is, both parties expressed a desire to **avoid** litigation. Indeed, just weeks before filing, Plaintiffs stated that they usually took three to four months to analyze a patent licensing issue and Mr. Howley reiterated Plaintiffs'

Despite the existence of an actual controversy, courts retain the discretion to refuse jurisdiction in declaratory judgment actions on the grounds that the case was filed for an improper purpose, such as obtaining an advantage during negotiations or forum shopping. EMC Corp. v. Norand Corp. 89 F.3d 807, 810 (Fed. Cir. 1996) (upholding trial court dismissal where party filed declaratory judgment action during negotiations to obtain leverage in negotiations); Nortek, Inc. v. Molnar, 36 F. Supp. 2d 63, 70 (D.R.I. 1999) (finding that where party reasonably refrained from filing a lawsuit to pursue negotiations, court would not reward forum shopping declaratory judgment action and declined to hear the case because otherwise it would undermine the "sound policy of promoting settlement and negotiations outside the courthouse."); Davox Corp. v. Digital Systems Int'l, Inc., 846 F. Supp. 144, 148 (D. Mass. 1993); Waters Corp. v. Hewlett-Packard Co., 999 F. Supp. 167 (D. Mass. 1998) (Gorton, J.).

In Davox Corp. v. Digital Systems Int'l, Inc., 846 F. Supp. 144, 148 (D. Mass. 1993) the defendant sent letters to the plaintiff in an attempt to resolve any potential infringement issue through negotiation of a licensing agreement, as opposed to litigation. In response, Plaintiff filed a declaratory judgment action. While the court found that it had jurisdiction to hear the case, it declined to exercise discretionary jurisdiction because the plaintiff's bad-faith forum shopping undermined the strong judicial policy of encouraging settlement. Id. The court stated:

> this court will not exercise its discretionary jurisdiction over this action because it would be inappropriate to reward—and indeed abet—conduct which is inconsistent with the sound policy of promoting extrajudicial dispute resolution and conservation of judicial resources.
>
> ...
>
> Here [plaintiff] should not be permitted to take advantage of the fact that [defendant] responsibly deferred filing potentially protracted and expensive litigation and, indeed, was perhaps misled into believing it would not be prejudiced by doing so by [plaintiff's] responses to its letters.
>
> ...

> [I]t would be inconsistent with the reformed legal culture and conduct the [Declaratory Judgment] Act and the [Civil Justice Delay and Expense Reduction] Plan seek to promote for this court to exercise its discretionary jurisdiction over [plaintiff's] declaratory judgment claim.

Id. This Court echoed similar concerns in Waters Corp. v. Hewlett-Packard Co., 999 F. Supp. 167 (D. Mass. 1998) (Gorton, J.) where the plaintiff filed a declaratory judgment action during ongoing patent licensing negotiations in an attempt to improve its position. After finding no actual controversy this Court stated:

> [E]ven if this Court had subject matter jurisdiction, it would dismiss this action rather than reward [plaintiff's] use of a judicial remedy to obtain a more favorable bargaining position in its negotiations with [defendant].

Id. at 174.

The foregoing cases are virtually indistinguishable from the case at bar. Here Plaintiffs repeatedly espoused their commitment to extrajudicial resolutions of patent licensing issues and their desire to avoid litigation while they were surreptitiously drafting and filing the instant complaint. Ex. 2, Tipton Dec., at ¶¶ 10, 11, 14. Just weeks before filing, Plaintiffs' counsel reiterated its position against litigation. Ex. 2, Tipton Dec., at ¶ 11. Just ten days before filing the lawsuit, and to allay Water Pik's concerns regarding delay to review new patents, Plaintiffs' counsel stated that Water Pik's damages would go back for six years, thus intimating that the parties had plenty of time to negotiate. Ex. 2, Tipton Dec., at ¶ 14. Incredibly, just two days before filing the lawsuit, as a show of "good faith" in the negotiations, Plaintiffs' counsel sent sales data information to permit Defendants to assess the reasonableness of royalty rates. Ex. 2, Tipton Dec., at ¶ 15. Further demonstrating Plaintiffs' improper motive in filing, in the negotiations immediately following the filing of the lawsuit Plaintiffs drastically reduced their royalty offer. Ex. 2, Tipton Dec., at ¶ 17. The Court should decline jurisdiction in this case

where Plaintiffs improperly used the Declaratory Judgment Act to obtain an advantage in negotiations and to deprive the true plaintiffs of the proper forum.

### III. THE COURT SHOULD DISMISS SKYVISION AND ROBINSON BECAUSE IT LACKS PERSONAL JURISDICTION OVER THOSE DEFENDANTS.

The Court should dismiss Skyvision and Robinson from this case because they do not have sufficient minimum contacts with Massachusetts to satisfy due process. Specifically, the only contacts related to his matter consist of telephone calls made by Robinson in a good faith attempt to negotiate a license agreement. Accordingly, the Court should dismiss Skyvision and Robinson from this case.

In patent infringement cases courts apply the law of the Federal Circuit, rather than the regional circuits, to determine personal jurisdiction. Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355, 1358 (Fed. Cir. 1998); Cognex Corp. v. Lemelson Med., Educ. & Research Found., 67 F. Supp. 2d 5, 7 (D. Mass. 1999) (Gorton, J.). The personal jurisdiction analysis is a three step process. First, the court must determine whether the defendant's actions satisfy the state's long-arm statute. Second, the court must analyze whether the defendant has sufficient "minimum contacts" to meet the requirements of due process. Finally, if the plaintiff has carried its burden with respect to the first two issues, the defendant may still avoid jurisdiction by demonstrating that jurisdiction would be unreasonable. Akro Corp. v. Luker, 45 F.3d 1541, 1549 (Fed. Cir. 1995).

Robinson's and Skyvision's contacts with Massachusetts are insufficient to satisfy the requirements of due process. To constitutionally exercise personal jurisdiction over an out-of-state defendant the plaintiff must prove that the defendant had sufficient minimum contacts with the forum state such that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

The court must determine whether the defendant purposefully directed his activities at residents of the state and, if so, whether the litigation arises out of or relates to those activities. Akro Corp. v. Luker, 45 F.3d 1541, 1545 (Fed. Cir. 1995). If the cause of action arises out of or relates to the defendant's contacts with the state, then the court may have specific personal jurisdiction. Red Wing Shoe Co., 148 F.3d at 1359. However, absent specific jurisdiction, the plaintiff must prove that the defendant had such continuous and systematic contacts with the state that he should have reasonably anticipated being haled into court there. Id. Random, fortuitous or attenuated contacts are not counted in the minimum contacts analysis. Id. Likewise, contacts resulting from the unilateral activity of others are irrelevant. Id.

In the patent infringement context, it is clear that merely sending cease and desist letters threatening litigation is insufficient to confer personal jurisdiction over a non-resident defendant. Red Wing Shoe Co., 148 F.3d at 1360-61; Cognex Corp., 67 F. Supp. 2d at 7-8. Furthermore, that a non-resident licensee of the patents produces products sold in the state is insufficient to confer jurisdiction. Red Wing Shoe Co., 148 F.3d at 1361. Indeed, this Court has found that even where the defendant sent cease and desist letters and granted licenses to in-state licensees, no personal jurisdiction existed where the letters were not clearly related to the licenses. Cognex Corp., 67 F. Supp. 2d at 9.

Here, neither Skyvision nor Robinson have sufficient contacts with the state of Massachusetts to justify the exercise of personal jurisdiction. No specific jurisdiction exists because the only contacts by Skyvision or Robinson related to this case consist of a handful of telephone calls to Plaintiffs' in-house counsel regarding a possible licensing agreement. Robinson Dec. at ¶ 10. In light of the fact that cease and desist letters threatening litigation based on patent infringement are insufficient to confer personal jurisdiction, as a matter of law

mere telephone calls regarding negotiations of a license agreement are also insufficient. Similarly, no general jurisdiction exists. Robinson has never visited Massachusetts in relation to the Patents-in-Suit. Robinson Dec. at ¶ 6. Indeed, the one time he visited Massachusetts in his life was to attend a medical conference there. Id. Neither Skyvision nor Robinson sells any products in Massachusetts. Id. While Water Pik does sell products developed from the Patents-in-Suit in Massachusetts, this is insufficient to confer personal jurisdiction over Skyvision or Robinson. Red Wing Shoe Co., 148 F.3d at 1361.

Plaintiffs attempt to manufacture contacts with Massachusetts by referring to a choice of law provision in an unrelated licensing agreement and alleged business contacts with the state. Complaint at ¶¶ 10,11. Regarding the first claim, the fact that parties to an unrelated agreement included a Massachusetts choice of law provision is insufficient to confer personal jurisdiction on its own. Burger King Corp. v. Rudzewicz, 105 S.Ct. 2174, 2187 (1985). This is particularly true where, as here, the parties to that agreement also contracted for all disputes to be resolved by arbitration in Dallas, Texas, thus evidencing no desire to invoke the benefits and protections of the laws of the state of Massachusetts. Regarding the purported "business contacts," neither Robinson nor Skyvision have ever visited Massachusetts in regards to the Patents-in-Suit and outside of the Braun license agreement that likely terminated over 5 years ago, the only contacts between Skyvision, Robinson and Plaintiffs have been the telephone calls made during the summer of 2004 regarding licensing. However, as discussed above those telephone calls do not rise to the level of contacts necessary for personal jurisdiction. Red Wing Shoe Co., 148 F.3d at 1360-61; Cognex Corp., 67 F. Supp. 2d at 7-8. Accordingly, insufficient contacts exist between Skyvision, Robinson and the State of Massachusetts to justify the exercise of personal jurisdiction, and they should be dismissed from this case.

## IV. ALTERNATIVELY, THE INTERESTS OF JUSTICE REQUIRE THE COURT TO TRANSFER THIS CASE TO COLORADO, THE PROPER FORUM.

Defendants alternatively move the Court to transfer the present action to the District of Colorado because the interests of justice favor good faith negotiation and extrajudicial resolution of disputes, not the filing of cases as bargaining chips in negotiations or the pilfering of the proper forum from the true plaintiffs. Furthermore, special circumstances exist such that the Court should ignore Plaintiffs' first-filed status and transfer this case to Colorado. Finally, because the Court does not have personal jurisdiction over Defendants Skyvision and Robinson, the only forum in which all parties can obtain relief is Colorado. Accordingly, the Court should transfer this case to the District of Colorado pursuant to 28 U.S.C. § 1404(a).

The primary factors courts address when ruling on a motion for change of venue include the interests of justice, convenience of witnesses and convenience of the parties. 28 U.S.C. § 1404(a).[3] However, normally a plaintiff's choice of forum is entitled to such great weight that courts will not order a change of venue unless the defendant can show such oppressiveness and vexation to it as to be out of all proportion to plaintiff's convenience or that trial in the forum is inappropriate because of considerations affecting the court's own ability to try the case. Veryfine Products, Inc. v. PHLO Corp., 124 F. Supp. 2d 16, 21-22 (D. Mass. 2000). However, exceptions to this rule exist. Kleinerman v. Luxtron Corp., 107 F. Supp. 2d 122, 124 (D. Mass. 2000) (Gorton, J.) For example,

> where 1) the patentee notifies an alleged infringer of suspected infringement, 2) good faith negotiations ensue, and 3) the alleged infringer then files a declaratory judgment action in another forum, a subsequently filed action by the patentee in the nature of patent

---

[3] An additional requirement for a change of venue motion is that the action could originally have been brought in the forum to which transfer is sought. It cannot be disputed that this action could have been brought originally in the United Stated District Court for the District of Colorado as Plaintiffs manufacture, import and/or sell potentially infringing products in Colorado. Complaint at ¶¶ 1-3.

> infringement filed within a reasonable time after the first action is entitled to some deference and the 'first-filed rule' will not be dispositive.

Id. at 124-25. Similarly, where one party misleads another into forgoing litigation in order to negotiate a settlement and then files suit, deference to the second-filed action is appropriate. The Holmes Group, Inc. v. Hamilton Beach/Proctor Silex, Inc., 249 F. Supp. 2d 12, 16 (D. Mass. 2002) (Gorton, J.) (citing Davox Corp. v. Digital Systems Int'l, Inc., 846 F. Supp. 144, 148 (D. Mass. 1993); Veryfine Products, Inc. v. PHLO Corp., 124 F. Supp. 2d 16, 22 (D. Mass. 2000)). Finally, where, as here, the first-filed suit is a declaratory judgment action for non-infringement courts will often not give the presumption of venue to the first-filed action.

> The first-filed suit is particularly suspect where a party, as in Davox, has brought a declaratory judgment action for non-infringement. The true underlying claim, of course, was patent infringement, and in cases such as this the circumstances demonstrate that the winner of the race to the courthouse should not enjoy the presumption of preferable venue.

Veryfine Products, Inc. v. PHLO Corp., 124 F. Supp. 2d 16, 22 (D. Mass. 2000). Thus, where special circumstances exist, the second-filed plaintiff's choice of home forum is entitled to a particularly strong and favorable presumption. Kleinerman v. Luxtron Corp., 107 F. Supp. 2d at 125.

In the instant case, all three sets of special circumstance exist. This case is virtually identical to the one this Court faced in Kleinerman. When Defendants realized that Plaintiffs' products were potentially covered by the Patents-in-Suit, Defendants contacted Plaintiffs to open negotiations regarding licensing of the patents. Ex. 1, Robinson Dec. at ¶ 8; Ex. 2, Tipton Dec., at ¶¶ 8,9. Thereafter, the parties negotiated in good faith for several months until Plaintiffs utilized the "Pearl Harbor" strategy to attempt to gain leverage in negotiations and filed the instant action seeking a declaration that their products do not infringe the Patents-in-Suit. Ex. 2,

Tipton Dec., at ¶¶ 9-16. Accordingly, this case clearly falls within the special circumstances set forth in Kleinerman.

This case also fits within the Davox special circumstances. Here the Plaintiffs specifically stated that they wanted to seek a non-judicial resolution of this case, and the Defendants agreed. Ex. 2, Tipton Dec., at ¶¶ 10, 11, 14. The parties were openly communicating in a non-confrontational free exchange of information in an attempt to determine the terms under which licensing would occur. Ex. 2, Tipton Dec., at ¶¶ 10, 11, 14, 15. There had been no escalation of tensions and no indication that Defendants were even considering a litigation solution when Plaintiffs filed the instant case. Ex. 2, Tipton Dec., at ¶¶ 12, 14. The interests of justice require that this attempt to commandeer the forum and obtain leverage during negotiations not be countenanced.

Finally, the Veryfine court recognized that where a litigant files a declaratory judgment action for non-infringement, the filing is suspect. Veryfine Products, Inc., 124 F. Supp. 2d at 22. Here, the true and proper claim for relief, patent infringement, lies with the Defendants. Because Plaintiffs' claims are merely a pretext for forum shopping and improper bargaining strategy, this Court should disregard Plaintiffs' first-filed status and instead consider the presumptions related to a plaintiff's choice of forum in favor of the rightful party, the Defendants in this case.

When the presumptions regarding choice of forum are viewed in favor of the rightful plaintiffs, it is clear that this matter should be transferred to the District of Colorado. Water Pik, Inc. is the exclusive licensee of the Patents-in-Suit. Ex. 2, Tipton Dec., at ¶ 3. Water Pik's principal place of business is in Fort Collins, Colorado. Ex. 2, Tipton Dec., at ¶ 2. During this trial two of its engineers, Hal Leuttgen and Ken Hair will likely be called to testify. Ex. 2, Tipton Dec., at ¶¶ 5-7. Messrs. Leuttgen and Hair are engineers who reside in Fort Collins,

Colorado and work in Water Pik's facility there. Ex. 2, Tipton Dec., at ¶¶ 5-6. Messrs. Leuttgen and Hair are responsible for developing products derived from the Patents-in-Suit as well as analyzing products that potentially infringe the Patents-in-Suit, including Plaintiffs' products in this case. Ex. 2, Tipton Dec., at ¶¶ 5-7.

After analyzing Plaintiffs' products, and with the help of Mr. Lee Osman, a partner at Dorsey & Whitney specializing in patent law, Mr. Leuttgen and Mr. Hair determined that one or more of Plaintiffs' products infringed one or more of the Patents-in-Suit. Ex. 2, Tipton Dec., at ¶ 7. Virtually all of Water Pik's documents relating to the Patents-in-Suit, as well as all documents related to the analysis conducted by Mr. Leuttgen and Mr. Hair, are located in Fort Collins, Colorado. Ex. 2, Tipton Dec., at ¶ 7. Thus, the Defendants' choice to file the second action in the home forum of Defendant Water Pik, and with the consent and submission to Colorado jurisdiction by the remaining Defendants, is entitled to a "strong presumption" that it is the proper forum. Finally, because the Court does not have personal jurisdiction over Skyvision and Robinson, the only venue that can grant complete relief to all interested parties is Colorado.

Defendants recognize that the remaining factors regarding the convenience of the parties and witnesses in this case are substantially equal. Plaintiffs' witnesses and attorneys presumably reside at or near their facilities in Boston, while Defendants' witnesses and attorneys reside at or near Water Pik's facilities[4] in Fort Collins, Colorado. But as a result, Plaintiffs cannot demonstrate that litigating in Denver would be oppressive or out of all proportion to Defendants' having to litigate in Boston. In fact, Plaintiffs' attorneys can readily become admitted to the

---

[4] Pursuant to agreements with defendants Skyvision and Robinson, Water Pik has the right to defend the Patents-in-Suit and thus the relevant inquiry is into the location of its witnesses and personnel.

District of Colorado and appear without the necessity of associating with local counsel. D.C.COLO.LCiv.R. 57.5.

Accordingly, in this case the interests of justice require that the Court transfer this matter to the District of Colorado because to keep the case in this forum would only encourage parties to engage in backhanded tactics aimed at wresting venue from the true plaintiff and obtaining leverage in negotiations.

WHEREFORE, Defendants respectfully request that the Court dismiss the case for lack of subject matter jurisdiction, decline to exercise its jurisdiction pursuant to the Declaratory Judgments Act, dismiss Defendants Skyvision, Inc. and Robinson for lack of personal jurisdiction, or alternatively transfer this case pursuant to 28 U.S.C. § 1404(a) to the district of Colorado for consolidation with the action filed by Defendants there.

Respectfully submitted,

/s/ Patrick M. Curran, Jr.

Thomas J. Sartory (BBO # 442500)
Patrick M. Curran, Jr. (BBO # 659322)
Goulston & Storrs
A Professional Corporation
400 Atlantic Ave.
Boston, MA 02110
Tel.   617-482-1776
Fax.   617-574-4112

Tucker K. Trautman (*pro hac vice* admission pending)
Scott P. Sinor (*pro hac vice* admission pending)
Dorsey & Whitney, LLP
370 Seventeenth St., Suite 4700
Denver, CO 80202
Tel.   303-629-3400
Fax    303-629-3450

ATTORNEYS FOR DEFENDANTS SKYVISION INC., DANE ROBINSON, AND WATER PIK TECHNOLOGIES, INC.

Dated: January 14, 2005

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above document was served by hand upon the attorney of record for each other party on January 14, 2005.

/s/ Patrick M. Curran, Jr.
Patrick M. Curran, Jr.