UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

THE GILLETTE COMPANY, BRAUN GMBH,
and GILLETTE COMMERCIAL
OPERATIONS NORTH AMERICA,

        Plaintiffs,

    v.

SKYVISION, INC., DANE ROBINSON, and
WATER PIK TECHNOLOGIES, INC.,

        Defendants.

Civil Action No. 04-12391-NMG

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
OR FOR CHANGE OF VENUE**

## TABLE OF CONTENTS

I.    INTRODUCTION ...........................................................................................1

II.   FACTS .......................................................................................................2

III.  THE COURT CAN AND SHOULD EXERCISE JURISDICTION UNDER THE
      DECLARATORY JUDGMENT ACT ...............................................................6

      A.    The Declaratory Judgment Act Was Enacted to Address This Precise Situation...... 6

      B.    Jurisdiction Is Proper Because An Actual Controversy Existed – Water Pik
            Threatened to Sue Gillette, Creating a Reasonable Apprehension of Suit ............... 6

      C.    Defendants' Request for Discretionary Dismissal Is Without Merit ........................ 9

IV.   THIS FIRST-FILED ACTION IS ENTITLED TO DEFERENCE AND THERE
      IS NO REASON TO DEFER TO THE SECOND-FILED FORUM THROUGH
      DISMISSAL OR TRANSFER UNDER 28 U.S.C. § 1404 ................................................11

      A.    Gillette's First-Filed Massachusetts Action Is Entitled to Deference ...................... 11

      B.    Transfer To Colorado Is Inappropriate Because The § 1404 Factors Support
            Remaining In Massachusetts ...................................................................... 13

V.    PERSONAL JURISDICTION EXISTS OVER ALL DEFENDANTS –
      ROBINSON AND SKYVISION HAVE EXTENSIVE CONTACTS WITH
      MASSACHUSETTS.......................................................................................14

VI.   IN THE ALTERNATIVE, THE ACTION CAN PROCEED IN
      MASSACHUSETTS WITHOUT ROBINSON AND SKYVISION BECAUSE
      THE PATENTEE IS NOT AN INDISPENSABLE PARTY ...........................................19

## TABLE OF AUTHORITIES

**Cases**

*Agridyne Tech., Inc. v. W.R. Grace & Co.- Conn.,*
    863 F. Supp. 1522 (D. Utah 1994)...............................................................10

*Akro Corp. v. Luker,*
    45 F.3d 1541 (Fed. Cir. 1995)..............................................................15-17

*Arcade, Inc. v. 3M,*
    43 U.S.P.Q.2d 1511 (E.D. Tenn. 1997) ................................................20

*Arrowhead Indus. Water, Inc., v. Ecolochem, Inc.,*
    846 F.2d 731 (Fed. Cir. 1988).....................................................................7

*Burger King Corp. v. Rudzewicz,*
    471 U.S. 462 (1985).............................................................................15, 16, 18

*Cambridge Literary Properties, Ltd. v. W. Goebel Porzellanfabrik,*
    295 F.3d 59 (1st Cir. 2002)..........................................................................15

*Capo, Inc. v. Dioptics Medical Prods., Inc.,*
    387 F.3d 1352 (Fed. Cir. 2004)....................................................................9

*Dainippon Screen Mfg Co. v. CFMT, Inc.,*
    142 F.3d 1266 (Fed. Cir. 1998)..............................................................19, 20

*Davox Corp. v. Digital Sys. Int'l,*
    846 F. Supp. 144 (D. Mass. 1993) .........................................................10-12

*Electronics for Imaging, Inc. v. Coyle,*
    340 F.3d 1344 (Fed. Cir. 2003)...................................................................16

*EMC Corp. v. Norand Corp.,*
    89 F.3d 807 (Fed. Cir. 1996)................................................................ 6-9, 11

*Genentech, Inc. v. Eli Lilly & Co.,*
    998 F.2d 931 (Fed. Cir. 1993).....................................................................11

*Genetic Implant Sys., Inc. v. Core-Vent Corp.,*
    123 F.3d 1455 (Fed. Cir. 1997)..............................................................16, 17

*Goodyear Tire & Rubber Co. v. Releasomers, Inc.,*
    824 F.2d 953 (Fed. Cir. 1987); 318 F.3d 1363 (Fed. Cir. 2002) .....................6

*The Holmes Group, Inc. v. Hamilton Beach/Proctor Silex, Inc.,*
    249 F. Supp. 2d 12 (D. Mass. 2002) ...........................................................12

*Kleinerman v. Luxtron Corp.,*
    107 F. Supp. 2d 122 (D. Mass. 1988) ...................................................12, 13

*Kmart Corp. v. Key Indus., Inc.*,
877 F. Supp. 1048 (E.D. Mich. 1994).............................................................10

*Lawson v. Affirmative Equities Co.*,
341 F. Supp. 2d 51 (D. Mass. 2004)...............................................................15

*Micro-Acoustics Corp. v. Bose Corp.*,
493 F. Supp. 356 (S.D.N.Y. 1980)..................................................................19

*Norman v. Brown, Todd & Heyburn*,
693 F.Supp. 1259 (D. Mass 1988)..................................................................13

*Nortek, Inc. v. Molnar*,
36 F. Supp. 2d 63 (D.R.I. 1999).....................................................................11

*Océ-Office Systems v. Eastman Kodak Co.*,
805 F. Supp. 642 (N.D. Ill. 1992)....................................................................8

*Pritzker v. Yari*,
42 F.3d 53 (1st Cir. 1994)...............................................................................15

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*,
148 F.3d 1355 (Fed. Cir. 1998).......................................................................17

*Van Dusen v. Barrack*,
376 U.S. 612 (1964)........................................................................................13

*Vanguard Research, Inc. v. Peat, Inc.*,
304 F.3d 1249 (Fed. Cir. 2002).........................................................................7

*Veryfine Prods., Inc. v. Phlo Corp.*,
124 F. Supp. 2d 16 (D. Mass. 2000)...............................................................12

*Waters Corp. v. Hewlett-Packard Co.*,
999 F. Supp. 167 (D. Mass. 1998)..................................................................11

*Wilton v. Seven Falls Co.*,
515 U.S. 277 (1995)........................................................................................11

Plaintiffs The Gillette Company, Braun GMBH, and Gillette Commercial Operations North America (collectively, along their subsidiaries, "Gillette") hereby oppose Defendants' Motion to Dismiss or Alternatively for Change of Venue (Docket No. 7).

## I.    INTRODUCTION

The sole requirement for jurisdiction under the Declaratory Judgment Act is that there be an actual controversy.  There is no dispute that Gillette sells products that Defendants have repeatedly alleged infringe the patents-in-suit.  The only issue is whether Gillette had a reasonable apprehension that it would face an infringement suit.  On this issue, the facts are overwhelming:

- Robinson, the patentee, initiated the dispute by contacting Gillette and accusing Gillette of patent infringement;

- Robinson repeatedly stated that Gillette products infringe one of his patents;

- Robinson involved his licensee – Water Pik – in the dispute, indicating that Gillette's products are covered by a license agreement between Robinson and Water Pik;

- Robinson told Gillette that Water Pik had "set up a budget" for the dispute;

- Water Pik escalated the dispute by involving its outside litigation counsel;

- Water Pik's litigation counsel repeatedly alleged that Gillette infringes one of Robinson's patents;

- Water Pik's counsel, unhappy with progress of the negotiations, threatened to file suit, stating, "That's where the suit comes in";

- Water Pik's counsel accused additional Gillette products of infringement;

- Water Pik's counsel asserted that Gillette infringes two additional Robinson patents; and then

1

- Negotiations ceased.

Gillette feared that it was about to face an infringement suit. And that fear was reasonable in response to Robinson and Water Pik's statements and actions. By the time negotiations had broken down, Gillette had endured repeated infringement accusations, believed that Water Pik had "set up a budget" for a patent litigation, knew that Water Pik's litigation counsel was actively involved in the dispute, and finally had been threatened with suit. This is precisely the type of situation that the Declaratory Judgment Act was intended to redress. Rather than wait for the inevitable, Gillette decided to clear the cloud of litigation over its products and file this suit.

The Court has jurisdiction over all of the parties and should resolve this controversy. Gillette's decision to sue in its home forum of Massachusetts should be given deference over Defendants' second-filed action in Colorado.

## II.    FACTS

This is not the first dispute between Robinson and Gillette. In 1996, Robinson alleged that a product offered by Braun, Inc. (a subsidiary of Gillette) infringed Robinson's '020 patent – one of the patents in this suit. Howley Decl., ¶2. Negotiations between the parties ensued, taking place primarily in telephone calls between Robinson and Chester Cekala, who was located in Gillette's headquarters in Boston. *Id.* at ¶3. After negotiations failed to resolve the dispute, Braun feared Robinson would file an infringement action. *Id.* at ¶4. Braun filed a declaratory judgment action in the U.S. District Court for the District of Massachusetts seeking a declaration of invalidity and noninfringement of the '020 patent (Civ. No. 96-12454-PBS). *Id.*

The parties settled the action on July 10, 1997. *Id.* at ¶5. The settlement agreement ("1997 Agreement"), signed by Robinson and Braun, granted Braun and its affiliates a license to the '020 patent and related patents. *Id.* at ¶6. Braun paid Robinson an advance on royalties, so

that future royalties would be deducted from this amount. *Id.* According to the agreement, any disputes concerning the settlement would be governed by Massachusetts law. *Id.* at ¶7.

Seven years later, in July, 2004, Robinson again contacted Gillette regarding the '020 patent. *Id.* at ¶8. To Gillette's surprise, Robinson accused Gillette of infringing the '020 patent, the patent licensed in the 1997 Agreement. *Id.* at ¶9. David Howley, one of Gillette's patent lawyers in Gillette's Boston headquarters, responded to the call. *Id.* Robinson told Howley that shortly after Robinson signed the 1997 Agreement with Braun, Robinson licensed exactly the same patent (the '020 patent) to Water Pik – a competitor. *Id.* at ¶10. Robinson claimed that Water Pik had a license to a portion of the '020 patent that was not covered by the 1997 Agreement. *Id.* He alleged that Gillette's Oral-B Hummingbird power flosser infringed the '020 patent and was covered by the Water Pik license. *Id.*

Gillette took these new infringement allegations very seriously. *Id.* at ¶11. After comparing the accused product to the asserted patent claims, Gillette determined that the Hummingbird product did not infringe the '020 patent. *Id.* Howley told Robinson that Gillette did not infringe the '020 patent and noted that, even assuming it infringed, the Hummingbird product would be covered by the 1997 Agreement. *Id.* at ¶12. Multiple conversations between Howley in Boston and Robinson ensued, during which Robinson's infringement threats were discussed. *Id.* When Robinson grew frustrated with the progress of the discussions, he attempted to ratchet up the pressure on Gillette by stating, "Water Pik is very serious about this matter. They have set up a budget for this issue." *Id.* at ¶13. Based on Howley's experience as an in-house attorney, Howley understood this comment to mean that Water Pik had already set up a budget in preparation for litigation against Gillette. *Id.*

Discussions between Robinson and Howley reached an impasse, and Robinson turned the negotiations over to Water Pik's general counsel, Richard Tipton. *Id.* at ¶14. Gillette had no history of negotiating patent disputes with Water Pik. *Id.* at ¶15. Water Pik's direct involvement in the negotiations confirmed what Robinson had said: Water Pik was serious and preparing to fight. *Id.* It also signaled to Howley that Robinson and Water Pik were increasing the pressure to try to force a favorable settlement. *Id.*

Howley first spoke with Tipton on October 1, 2004. *Id.* at ¶16. Howley again explained why Robinson and Water Pik's infringement allegations were without merit. *Id.* The next time they spoke, Tipton had his outside litigation counsel on the phone. *Id.* at ¶17. Lee Osman, a patent attorney at Dorsey & Whitney, LLP, joined Tipton for all remaining discussions. *Id.* To Howley, the introduction of outside litigation counsel indicated an escalation of tensions, and that Water Pik was already using its "budget" for litigation. *Id.* Osman and Tipton tag teamed Howley, repeatedly declaring that Gillette's Hummingbird product infringed the '020 patent. *Id.*

During the week of October 18, 2004, three months after negotiations had begun, Tipton and Osman alleged for the first time that another Gillette product (the 8000 series power toothbrush) also infringed the '020 patent. *Id.* at ¶18. This separate infringement accusation represented a major setback in the negotiations. Howley viewed this action as another attempt to gain leverage over Gillette by broadening the list of accused products and creating more uncertainty. *Id.* Gillette analyzed the new infringement allegations and determined that the newly-accused products did not infringe for essentially the same reasons as were applicable to the Hummingbird product. *Id.* at ¶19.

Negotiations grew tense. Tipton became increasingly irritated with Howley's non-infringement position. *Id.* at ¶20. Finally, when Tipton could not persuade Howley on the

merits, he threatened to sue Gillette, saying, "That's where the suit comes in." *Id.* at ¶21. The threat was clear and unequivocal. *Id.* at ¶22. Howley understood that this was no idle threat because he believed Water Pik had already set up a litigation budget to sue Gillette. *Id.* Howley feared that a suit was imminent if Gillette did not agree to Water Pik's terms. *Id.*

Within days of threatening to sue Gillette, Water Pik raised the ante by accusing Gillette of infringing two additional Robinson patents, U.S. Patent Nos. 5,787,908 (the "'908 patent"), and 5,944,033 (the "'033 patent"), both related to the '020 patent. *Id.* at ¶23. The addition of these new patents marked the beginning of the end of the negotiations. Rather than narrowing the issues, Water Pik had opened up two new fronts. *Id.* Howley was shocked at the new infringement allegations and convinced that Water Pik had no intention of negotiating a resolution to this dispute in good faith. *Id.* at ¶24.

On November 10, Howley had a final conversation with Water Pik's outside litigation counsel. *Id.* at ¶26. Howley explained that the addition of the two new patents had substantially weakened Water Pik's position because the file histories for these patents supported Gillette's non-infringement argument. *Id.* Osman and Howley sparred over the issue, but by now the gap between the parties had widened with no apparent way for the parties to reach an agreement. *Id.* at ¶27. At the end of the phone call, neither party made any attempt to schedule future discussions. *Id.* This was a critical departure from the parties' previous custom of scheduling a time for the next phone call. *Id.*

Despite four months of good faith efforts on the part of Gillette, the negotiations had failed. No further discussions were planned. And Gillette feared that Robinson and Water Pik were about to file suit. *Id.* at ¶28. On November 12, Gillette filed this lawsuit, invoking this Court's jurisdiction for a judicial determination of its rights. *Id.* at ¶29.

III.    **THE COURT CAN AND SHOULD EXERCISE JURISDICTION UNDER
        THE DECLARATORY JUDGMENT ACT**

    A.    **The Declaratory Judgment Act Was Enacted to
        <u>Address This Precise Situation</u>**

The Declaratory Judgment Act exists to address precisely the situation presented by this action.  A company accused of infringement and threatened with a lawsuit does not have to sit idly by and wait – in fear – for suit to be filed.  Indeed, "the purpose of the Declaratory Judgment Act ... in patent cases is to provide the allegedly infringing party relief from uncertainty and delay regarding its legal rights." *Goodyear Tire & Rubber Co. v. Releasomers, Inc*., 824 F.2d 953, 956 (Fed. Cir. 1987).  Gillette required this relief to clear the cloud formed by Water Pik and Robinson's allegations of patent infringement.  Gillette exercised its right to seek a judicial determination of the claims actually asserted against it.  But, Water Pik and Robinson prefer that this dispute be shifted to their choice of forum and seek to deny Gillette its right to declaratory relief in its home forum.

    B.    **Jurisdiction Is Proper Because An Actual Controversy Existed – Water Pik
        <u>Threatened to Sue Gillette, Creating a Reasonable Apprehension of Suit</u>**

This Court has jurisdiction because an actual controversy existed between the parties. Water Pik threatened to sue Gillette, creating a reasonable apprehension of suit.  28 U.S.C. § 2201(a).  The Federal Circuit has developed a two-part inquiry to determine whether an "actual controversy" exists under the Act.  *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 811 (Fed. Cir. 1996).  First, Gillette must actually produce or be prepared to produce an allegedly infringing product. *Id.*  It is undisputed that this prong is satisfied – Gillette sells products that allegedly infringe Robinson's patents.  Second, Robinson or Water Pik's conduct must have created an objectively reasonable apprehension on the part of Gillette that Robinson or Water Pik would initiate suit if the activity in question continued. *Id.*  It is this question that the Court must decide.

6

Water Pik's express threat of suit is all that is needed to create a reasonable apprehension on the part of Gillette. *See Arrowhead Indus. Water, Inc., v. Ecolochem, Inc.*, 846 F.2d 731, 736 (Fed. Cir. 1988) ("If defendant has expressly charged a current activity of the plaintiff as an infringement, there is clearly an actual controversy, certainty has rendered apprehension irrelevant, and one need say no more."). As negotiations were deteriorating, Tipton, Water Pik's counsel, made an unequivocal threat when he said, "***That's where the suit comes in.***" Howley Decl., ¶21. Even Tipton does not dispute the general nature of the threat. In his declaration, Tipton testifies, "I explained that if Plaintiffs were not serious about exploring the licensing option, ***Water Pik was willing to consider other legal avenues.***" Tipton Decl., ¶ 11 (emphasis added). Tipton was threatening Gillette with a patent infringement suit. Although Tipton no longer remembers the specifics of the threat ("I do not recall *expressly* threatening patent litigation during this call or at any other time. *Id.* (emphasis added)), there is no dispute that a threat was made.

Critically, whatever Tipton intended by this threat is irrelevant. The test for reasonable apprehension examines the *accused infringer's* state of mind, not the accuser's intentions. *See Vanguard Research, Inc. v. Peat, Inc.*, 304 F.3d 1249, 1255 (Fed. Cir. 2002). Here, regardless of what Water Pik intended, Gillette reasonably feared it was going to be sued.

Moreover, the entire circumstances surrounding the negotiations reasonably caused Gillette to fear an imminent lawsuit. When, in the context of ongoing negotiations, "the patentee takes steps that create a reasonable apprehension that he will seek redress through the courts, the alleged infringer is not required to wait for the patentee to decide when and where to sue, but can take the initiative and seek declaratory relief." *EMC,* 89 F.3d at 811. There are no "magic words" that a patentee must recite to create federal jurisdiction. The test, instead, is a pragmatic

one.  *Id.* at 811-12.  A court must determine if an accused infringer reasonably believed the patentee intended to enforce its patent in court.  *Id.* at 811.

Here, the evidence overwhelmingly demonstrates that Gillette's apprehension of suit was reasonable.  Every time Robinson or Water Pik became frustrated with the negotiations, they increased the pressure by suggesting that litigation was around the corner.  When Robinson grew aggravated with Gillette, he told Howley that Water Pik was serious about this matter and had even set up a budget; Howley understood this to mean a budget for litigation.  Howley Decl., ¶13.  Robinson then turned the negotiations over to Water Pik's counsel, who brought in Water Pik's outside litigation counsel.  *Id.* at ¶¶14-17.  Each switch indicated to Howley that Water Pik was getting closer to filing suit.  Finally, when Water Pik's counsel became irritated with the negotiations, he threatened to sue Gillette.  *Id.* at ¶¶21-22.  Negotiations reached an impasse shortly after the threat was made and no further talks were scheduled.  *Id.* at ¶27.  Thus, Gillette's belief that a lawsuit was imminent was reasonable in light of Robinson and Water Pik's conduct.  *Id.* at ¶28.

The facts in this case are more compelling than those found sufficient to confer jurisdiction in similar cases.  In *Océ-Office Systems v. Eastman Kodak Co.*, 805 F. Supp. 642 (N.D. Ill. 1992), the court rejected defendant's position that declaratory judgment was inappropriate in the face of ongoing negotiations.  Instead, the court found that the parties' negotiations had become "fruitless." *Id.* at 647.  Likewise, negotiations between Water Pik and Gillette had become fruitless. Howley Decl, ¶28.  The parties were getting further apart because Water Pik continued to add new issues – two additional patents and additional accused products – and Gillette became more convinced that Water Pik's allegations were without merit.

Each of the elements identified in *Océ-Office* as providing a reasonable apprehension of suit has an analog in this case: (1) Water Pik and Robinson repeatedly charged Gillette with infringement. *E.g.,* Howley Decl., ¶¶9, 10, 17, 18, 23.  (2) Water Pik's legal counsel and outside litigation counsel had concluded that Gillette infringed.  *Id.* at ¶17. (3) Water Pik refused to modify its position despite persuasive evidence of non-infringement.  *Id.* at ¶26. (4) Water Pik's counsel threatened to sue Gillette, stating "That's where the suit comes in."  *Id.* at ¶21. And (5) Robinson and Water Pik's statements and actions suggested that litigation was not just contemplated, but imminent if negotiations failed.  *Id.* at ¶¶8-28.

### C.    Defendants' Request for Discretionary Dismissal Is Without Merit

Despite repeated allegations of infringement and a direct threat to sue, Defendants urge the Court to decline to hear this declaratory judgment action.  Water Pik and Robinson, however, offer no good reason for such discretionary dismissal.  "There must be well-founded reasons for declining to entertain a declaratory judgment action.  Absent such reasons, precedent establishes that when there has been a direct charge of infringement by the patentee, and an actual controversy exists due to ongoing activity that has been accused of infringement, the accused infringer has the right to resolve the dispute." *Capo, Inc. v. Dioptics Medical Prods., Inc.*, 387 F.3d 1352, 1355 (Fed. Cir. 2004) (citations omitted).  A district court should not "dismiss a declaratory judgment action merely because a parallel patent infringement suit was subsequently filed in another district; to take such action without any other reasons ... would be contrary to the general rule favoring the forum of the first-filed action." *EMC,* 89 F.3d at 813; *see also infra at* §IV.A.  Here, having faced direct charges of infringement against current products and an actual threat of litigation, Gillette exercised its right to obtain a declaration of its rights.  Defendants' attempt to deny this right is improper.

Where, as here, defendants accuse a plaintiff's products of infringement, threaten to sue, and drive the parties further apart during negotiations, discretionary dismissal of a declaratory judgment action is particularly inappropriate.  Negotiations failed after Defendants alleged infringement of another product, added two new patents and then threatened to sue.  At this point, further discussions would have been fruitless.  *See Kmart Corp. v. Key Indus., Inc.*, 877 F. Supp. 1048, 1054 (E.D. Mich. 1994) ("[C]ourts have refused to dismiss a declaratory action where . . . the plaintiff filed the declaratory action justifiably believing that further settlement negotiations would be fruitless."); *Agridyne Tech., Inc. v. W.R. Grace & Co.- Conn.,* 863 F. Supp. 1522, 1527 (D. Utah 1994).  It became apparent that Defendants were not negotiating in good faith and that a mutually agreeable settlement was out of reach.

Water Pik's suggestion that Gillette filed this lawsuit to obtain a bargaining advantage makes little sense.  When negotiations broke down, the parties had all their cards on the table and had exhausted their arguments.  No bargaining advantage could accrue to Gillette through the filing of this action.[1]

Water Pik's argument that the Massachusetts action should be dismissed because it is the result of forum shopping rings hollow.  Indeed, it is the Defendants who, by virtue of their second-filed action in Colorado, are attempting to engage in forum shopping.  Defendants' sole purpose in attempting to dismiss this action is to shift this dispute to Water Pik's home forum.  Massachusetts, not Colorado, is the appropriate forum for this action.  Robinson and SkyVision

---

[1] This is not a situation, as in *Davox Corp. v. Digital Sys. Int'l,* 846 F. Supp. 144 (D. Mass. 1993), where entertainment of the suit would reward "conduct which is inconsistent with the sound policy of promoting extrajudicial dispute resolution, and conservation of judicial resources." Here, negotiations had reached an impasse, and the Defendants themselves filed suit in another forum.  Thus, dismissing this action will not promote extrajudicial dispute resolution; instead, it will merely shift the burden from one court to another.

10

are located in Arizona, Water Pik in Colorado, and Gillette in Massachusetts.  But Gillette's U.S.

witnesses are located in Massachusetts, the majority of the accused activity took place here, and

the documentary evidence is generally located here.  Howley Decl., ¶30.  Only a licensee is

located in Colorado.  To dismiss the declaratory judgment action on discretionary grounds due to

an accusation of forum shopping would be unwarranted.

Each case Defendants cite in urging for discretionary dismissal is inapposite here. *See*

*EMC*, 89 F.3d at 814 (upholding discretionary dismissal where the district court was concerned

that the accused infringer would "abuse the declaratory judgment device to obtain a more

favorable bargaining position in its ongoing negotiations with the patentee"); *Nortek, Inc. v.*

*Molnar,* 36 F. Supp. 2d 63, 70 (D.R.I. 1999) ("This is not a patent dispute where a manufacturer

files a declaratory judgment action against a patent holder because even a doubt over its right to

produce a product can damage the product's value."); *Davox,* 846 F. Supp. at 148 (declining to

exercise jurisdiction where "Davox's response to DSI's inquiry could have initiated various

courses of dealing between the parties that would have fallen short of litigation"); *Waters Corp.*

*v. Hewlett-Packard Co.*, 999 F. Supp. 167, 174 (D. Mass. 1998) (declining jurisdiction because

the accused infringer, "in reaction to a single communication by Hewlett-Packard[,] launched a

four-front attack [and] thereby foreclosed any non-combative exploration of the relationship

between Hewlett-Packard's patents and Waters' Alliance HPLC Systems").

**IV.    THIS FIRST-FILED ACTION IS ENTITLED TO DEFERENCE AND THERE IS
        NO REASON TO DEFER TO THE SECOND-FILED FORUM THROUGH
        DISMISSAL OR TRANSFER UNDER 28 U.S.C. § 1404**

**A.      Gillette's First-Filed Massachusetts Action Is Entitled to Deference**

Gillette's decision to file in Massachusetts should be given substantial deference.  Absent

special circumstances, where two actions are filed in different venues with the same subject

matter, there is a strong presumption in favor of Gillette's chosen forum of Massachusetts.  *See*

*EMC*, 89 F.3d at 813; *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993)

(overruled on other grounds, *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995)); *The Holmes*

*Group, Inc. v. Hamilton Beach/Proctor Silex, Inc.*, 249 F. Supp. 2d 12, 19 (D. Mass. 2002)

(Gorton, J.).  No reason exists in this case to depart from the general rule.

      The cases Defendants rely upon in favor of the second-filed Colorado action actually

support Gillette's position.  In *Kleinerman v. Luxtron Corp.*, 107 F. Supp. 2d 122, 125 (D. Mass.

1988) (Gorton, J.)*,* this Court held that, even where the first-filed rule is not dispositive, a

plaintiff's selection of his home forum is entitled to special deference.

> At the outset, there is a presumption in favor of Kleinerman's chosen forum of
> Massachusetts. That presumption is particularly strong here because the jurisdiction he
> chose is his home forum. When a plaintiff chooses his home forum, the choice more
> likely represents considerations of convenience rather than vexation or harassment to the
> defendant, thus elevating the hurdle the defendant is required to clear to warrant transfer.

*Id.* (citations omitted).  Gillette's choice of its home forum should prevail.

      In *The Holmes Group, Inc.*, 249 F. Supp. 2d at 19, the court *declined* to transfer the case

to the second-filed forum in view of the policy favoring deference to the first-filed suit.  The

court concluded that transfer would, at best, merely shift the inconvenience from one party to

another. *Id.* at 18**.** The situation here is no different.

      In *Veryfine Prods., Inc. v. Phlo Corp.*, 124 F. Supp. 2d 16, 22 (D. Mass. 2000)*,* the court

held that the first-filed rule is not dispositive where the first filer simply won a race to the

courthouse. *Id.***.**  No suggestion exists that the parties raced to the courthouse here; indeed, the

Colorado action was not filed until January 13, 2005, over two months after the filing of the

Massachusetts action.

      In *Davox Corp.*, 846 F. Supp. at 148, the court declined to defer to the first-filed forum in

circumstances where the accused infringer misled into quiescence, then, out of the blue, filed a

12

declaratory judgment action.  Here, four months of negotiations had failed to reach an agreement, and no further discussions were planned.  Further talks would have been fruitless.

**B.     Transfer To Colorado Is Inappropriate Because The § 1404
Factors Support Remaining In Massachusetts**

Gillette's choice of its home forum – Massachusetts – should prevail because all of the relevant 1404 factors favor Massachusetts, not Colorado.  In *Kleinerman*, 107 F. Supp. 2d at 125, this Court recited six factors a court must consider when deciding whether to transfer a case under 28 U.S.C. § 1404.  The first factor is the plaintiff's choice of forum. *Id.*  Here, Gillette has chosen Massachusetts.

The second factor requires a court to weigh the convenience of the parties. *Id.* Transferring this case to Colorado would merely shift the burden from Water Pik to Gillette. The incremental burden on Gillette would be greater, since Gillette's employees and documents are at issue, not Water Pik's.  The burden on Robinson and SkyVision, who are located in Arizona, would not substantially change.  While the distance Robinson and SkyVision would have to fly to Massachusetts is greater than the distance to Colorado, once they need to leave their home and travel, the length of the flight is not a meaningful factor.  Moreover, a court should not transfer a case merely to shift the burden of inconvenience from one party onto another. *E.g., Norman v. Brown, Todd & Heyburn*, 693 F.Supp. 1259, 1261 (D. Mass 1988); *see also Van Dusen v. Barrack,* 376 U.S. 612, 645-46 (1964) ("Section 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient.").

The third factor takes into account the convenience of witnesses and location of documents. *Id.*  In a patent infringement action, the most relevant percipient witnesses and documents are those related to the development and sale of the accused products – i.e., Gillette's witnesses and documents. Most, if not all, of the U.S.-based witnesses and documents are

13

located in Massachusetts.  Howley Decl., ¶30.  The patentee and his documents are also relevant;

but here Robinson resides in Arizona (*id.* at ¶31), and will be required to travel whether the suit

takes place in Colorado or in Massachusetts.  Since many of Gillette's witnesses and documents

are located in Massachusetts and the burden on the patentee will be equal in Massachusetts or

Colorado, this factor supports the Massachusetts venue.

Under the fourth factor, the court considers any connection between the forum and the

issues. 107 F. Supp. 2d at 125.  Massachusetts has a much closer connection to the issues since

the alleged infringement occurred here.  No evidence suggests that any relevant events took

place in Colorado; the only connection Colorado has to this action is that it is the location of a

mere licensee.

The fifth factor addresses the law to be applied. *Id.*  Gillette contends that this dispute

will require interpretation of the 1997 Agreement between Robinson and Braun.  This agreement

expressly states that Massachusetts law governs disagreements falling within its scope. Thus, this

factor supports the Massachusetts forum..

The sixth factor, concerning the state or public interest at stake, *id.*, is neutral, since both

Massachusetts and Colorado have an interest in protecting their corporate residents.

Overall, the factors overwhelmingly support a denial of the Defendants' motion to

transfer.  Combined with the strong rule favoring deference to the first-filed forum, this Court

should retain this case in Massachusetts.

## V.    PERSONAL JURISDICTION EXISTS OVER ALL DEFENDANTS – ROBINSON AND SKYVISION HAVE EXTENSIVE CONTACTS WITH MASSACHUSETTS

There is no dispute that the Court has jurisdiction over Water Pik.  Only Robinson and

SkyVision have contested jurisdiction.  This court may exercise personal jurisdiction over

Robinson and SkyVision by virtue of their extensive contacts with the Commonwealth of

Massachusetts over the course of its licensing of the '020 patent as well as by virtue of the substantial royalties they collected related to Massachusetts sales.[2]

Gillette has plainly set forth a prima facie case in favor of specific personal jurisdiction over Robinson and SkyVision. *See Lawson v. Affirmative Equities Co.*, 341 F. Supp. 2d 51, 57-58 (D. Mass. 2004) (holding that a court evaluating the sufficiency of an allegation of personal jurisdiction "ascertains only whether the facts duly proffered, fully credited, support the exercise of personal jurisdiction"). Two requirements must be met: the state's long-arm statute must be satisfied, and jurisdiction must be constitutionally permissible. *Pritzker v. Yari*, 42 F.3d 53, 60 (1st Cir. 1994).

In Massachusetts, the jurisdictional question reduces to the constitutional requirement. *See* Mass. Gen. Laws ch. 223A, §§ 3(a)&(c); *Cambridge Literary Properties, Ltd. v. W. Goebel Porzellanfabrik*, 295 F.3d 59, 63 (1st Cir. 2002). To constitutionally exercise jurisdiction over a nonresident, the nonresident must have "minimum contacts" with the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). There are two parts to the minimum contacts analysis. "[T]he due process inquiry requires that we determine whether [the patentee] purposefully directed his activities at residents of [the forum] and, if so, whether the litigation results from alleged injuries that arise out of relate to those activities." *Akro Corp. v. Luker,* 45 F.3d 1541, 1545 (Fed. Cir. 1995). In addition, a court must determine if the exercise of jurisdiction over the defendant would be fair. *Id.*

---

[2] Robinson and SkyVision have contested jurisdiction, but have objected to producing information sufficient to demonstrate the extent of their contacts with Massachusetts. Smith Decl., ¶3. Water Pik has also objected to providing information relevant to Robinson and SkyVision's contacts with Massachusetts, including sales data and royalties. *Id.* Therefore, the Court should presume that Defendants have substantial contacts with Massachusetts. In the alternative, Plaintiffs respectfully request that the Court grant Plaintiffs' concurrently-filed motion for jurisdictional discovery.

The first test is often articulated as whether an individual has purposefully availed itself of the privilege of the benefits of a forum's laws. *See Burger King Corp.*, 471 U.S. at 475. Robinson and SkyVision have purposefully availed themselves of the privilege of conducting business in Massachusetts in three ways.

First, Robinson and SkyVision entered into a license agreement with Gillette, a Massachusetts company, in 1997. Howley Decl., ¶5. This 1997 Agreement was the subject of extensive negotiations between Robinson and Gillette's in-house counsel located in Boston. The 1997 Agreement involved the same patent at issue here and contained a Massachusetts choice of law provision. *Id.*, Ex. A at ¶ 6.07. A choice of law provision is significant because it demonstrates that Robinson and SkyVision purposefully availed themselves of the benefits and protections of Massachusetts. *See Burger King Corp.*, 471 U.S. at 482; *Electronics for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1353 (Fed. Cir. 2003).

Furthermore, licensing the patent to a Massachusetts company, coupled with sending cease-and-desist letters to Massachusetts, suffices to confer personal jurisdiction under the "purposeful availment" test. *See Akro Corp.*, 45 F.3d at 1548-49 (holding that sending cease-and-desist letters to an in-state entity coupled with licensing the patent to another in-state entity is sufficient to confer personal jurisdiction); *Genetic Implant Sys., Inc. v. Core-Vent Corp.*, 123 F.3d 1455, 1458 (Fed. Cir. 1997) (finding contacts with forum state that arose before the grant of the patent-in-suit relevant to the personal jurisdiction analysis). During the course of negotiating the 1997 Agreement, Robinson and SkyVision communicated numerous times with Gillette in Massachusetts. Howley Decl., ¶3.

Second, Robinson and SkyVision derived substantial revenues from the 1997 Agreement. *Id.* at ¶6. The 1997 Agreement contributed to Robinson's and SkyVision's presence in

Massachusetts by developing a customer base for the patented product in Massachusetts.  These activities, too, constitute substantial availment of the laws of the forum state.  *See Genetic Implant Sys.*, 123 F.3d at 1458.

Third, Robinson and SkyVision entered into an exclusive licensing agreement with Water Pik, a company that does substantial business in Massachusetts, giving rise to the present controversy.  Where a patentee grants a license to a licensee or distributor in a forum state, then sends cease-and-desist letters to the forum, the patentee has purposefully availed himself of the laws of the forum.  *See Akro Corp.*, 45 F.3d at 1548-49; *Genetic Implant Sys.*, 123 F.3d at 1458-59.  It does not matter where Water Pik is incorporated, so long as it has a substantial connection with the forum state.  *See Genetic Impant Systems, Inc. v. Core-Vent Corp.*, 123 F.3d 1455, 1459 (Fed. Cir. 1997).  Because it is undisputed that Water Pik has substantial contacts with Massachusetts, and that Robinson and SkyVision have licensed the patent to Water Pik, personal jurisdiction exists over Robinson and SkyVision in Massachusetts.  *See Akro Corp.*, 45 F.3d at 1548.

The second prong of the "minimum contacts" analysis is easily satisfied: the reasonable apprehension of suit "arises out of" the licensing discussions that were directed toward Massachusetts.  The Federal Circuit has recognized that cease and desist letters are "substantially related to the cause of action." *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1360 (Fed. Cir. 1998).  Thus, Robinson and SkyVision's forum-directed communications, charging Gillette with infringement, are substantially related to the cause of action.

This lawsuit also "arises out of" Robinson and SkyVision's license agreement with Water Pik, which is transacting business in Massachusetts for the purposes of the minimum contacts

analysis. Robinson and SkyVision receive substantial royalties from Water Pik as a result of Water Pik's sales in Massachusetts.

Similarly, Robinson and SkyVision's extensive communications with Gillette in negotiating the 1997 Agreement are relevant. The Court may have to interpret the 1997 Agreement, regarding whether Gillette's products are covered by this agreement.[3] Because the terms of the 1997 Agreement provide that disputes arising under it are governed by Massachusetts law, *see* Howley Decl., Ex. A at ¶ 6.07, these issues will be resolved according to Massachusetts law. Therefore, these issues "arise out of" SkyVision and Robinson's contacts with Massachusetts.

Finally, under the third prong of the due process analysis, the exercise of jurisdiction over Robinson and SkyVision is reasonable. *See Burger King*, 471 U.S. at 477. Robinson has not shown that it would be any more inconvenient for him to litigate in Massachusetts than it would be for him to litigate in Colorado, as he is located in Arizona.

Massachusetts surely has an interest in protecting the rights of its corporate citizens to produce products free of specious allegations of patent infringement, and to protect its corporate citizens against having to unfairly pay royalties for a patent it does not infringe. Massachusetts also has an interest in protecting the welfare of its consumers. If Gillette proves that the patents-in-suit are invalid, or that the scope of the claims are narrow, then the royalties owed to Robinson and SkyVision will be reduced. Prices for products previously covered by the patents will drop, and Massachusetts consumers will benefit.

---

[3] The 1997 Agreement also includes a provision requiring that its terms be maintained confidential. *See* Howley Decl., Ex. A at ¶ 6.05. This provision was apparently violated by Robinson or SkyVision by disclosing portions of the 1997 Agreement to Water Pik.

## VI.    IN THE ALTERNATIVE, THE ACTION CAN PROCEED IN MASSACHUSETTS WITHOUT ROBINSON AND SKYVISION BECAUSE THE PATENTEE IS NOT AN INDISPENSABLE PARTY

Even if personal jurisdiction does not exist against Robinson and SkyVision, this case may go forward against remaining defendant Water Pik.  Fed. R. Civ. P. 19(b).  Neither Robinson nor SkyVision are indispensable parties under Rule 19(b).  Indeed, none of the Defendants claims that either Robinson or SkyVision is an indispensable party.

First, there is no prejudice to Robinson or SkyVision because their interests are adequately represented by WaterPik.  Indeed "prejudice to an absent party is mitigated when the interests of that party are adequately protected by those who are present." *Dainippon Screen Mfg Co. v. CFMT, Inc.,* 142 F.3d 1266, 1272 (Fed. Cir. 1998).  Here, Water Pik adequately represents the interests of SkyVision and Robinson because they share the same interest in the patents' validity and both would lose the benefit of the license in the event of a declaration of invalidity.  Likewise, they all serve to gain in the event the patent is held infringed.  The license agreement between Robinson/SkyVision and Water Pik further supports this view.  *See* Smith Decl., Ex. D.

In fact, their actions have demonstrated that Water Pik adequately represents Robinson and SkyVision.  Robinson, SkyVision and WaterPik were all represented by the same counsel in the negotiations.  When negotiations between Robinson and Gillette proved fruitless, Robinson turned over negotiations to Water Pik.  Now, all three parties are represented by the same counsel in this action and in the Colorado action, which would only be possible under the ethical rules if there was no conflict among their interests vis-à-vis Gillette.  It is reasonable to assume that the patentee's presence would not change the outcome of the case.  *See Dainippon*, 142 F.3d at 1272 ("'[B]ecause the same attorney who represents [the licensee] in this action would apparently also represent [the patentee] if it intervened, the presence of [the patentee] would not

19

change the course of the action in the slightest degree.'") (alteration in original) (quoting *Micro-Acoustics Corp. v. Bose Corp.,* 493 F. Supp. 356, 361 (S.D.N.Y. 1980)).

Second, "adequacy of the judgment, favors maintenance of the suit in [the patentee's] absence because a declaration of invalidity or noninfringement would fully serve [the plaintiff's] interest in ensuring that it is free from claims of patent infringement." *Id.* at 1273. Here, a declaration of invalidity or noninfringement against Water Pik would preclude a suit for infringement by SkyVision or Robinson because they are in privity. *See Arcade, Inc. v. 3M,* 43 U.S.P.Q.2d 1511, 1997 U.S. Dist. LEXIS 21687, *22 (E.D. Tenn. 1997) ("BBCo is in privity with Arcade by virtue of their exclusive licensing agreement. Arcade will adequately and vigorously represent the interests of BBCo in the patents. Any judgment in the instant case involving Arcade and the patents will be res judicata as to BBCo under the privity doctrine of virtual representation.") As noted earlier, all Defendants share the same interest in the patents' validity and they all would lose the benefit of the license in the event of a declaration of invalidity. Robinson and SkyVision are adequately represented by Water Pik; their presence is unnecessary to ensure an adequate judgment.

Finally, although an alternative forum exists, this factor by itself is insufficient to convert Robinson or SkyVision into indispensable parties. *Dainippon*, 142 F.3d at 1273. As discussed above, Massachusetts has more of an interest in resolving this dispute.

For the foregoing reasons, Plaintiffs request that this Court deny the Defendants' motion to dismiss or transfer the case.

Dated:  February 28, 2005         /s/ Craig R. Smith
_____
Alan D. Smith (BBO# 629,034)
Craig R. Smith (BBO# 636,723)
Thomas A. Brown (BBO# 657,715)
FISH & RICHARDSON P.C.
225 Franklin Street
Boston, MA  02110
(617) 542-5070 Telephone
(617) 542-8906 Facsimile

Attorneys for Plaintiffs
THE GILLETTE COMPANY, BRAUN
GMBH, and GILLETTE COMMERCIAL
OPERATIONS NORTH AMERICA