IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE GILLETTE COMPANY, BRAUN GMBH, and GILLETTE COMMERCIAL OPERATIONS NORTH AMERICA,<br><br>　　Plaintiffs,<br><br>v.<br><br>SKYVISION, INC., DANE ROBINSON, and WATER PIK TECHNOLOGIES, INC.,<br><br>　　Defendants. | Civil Action No. 04-CV-12391 NMG |

# REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR ALTERNATIVELY FOR CHANGE OF VENUE

Defendants SkyVision, Inc., Dane Robinson and Water Pik Technologies, Inc. ("Defendants"), by and through their undersigned counsel, submit this Reply Memorandum In Support of Motion to Dismiss or Alternatively for Change of Venue as follows:

## I. INTRODUCTION

Plaintiffs present the Court their half of the story and, based on that, ask the Court to find that an actual controversy existed when they filed suit. Standing alone, it is doubtful whether Plaintiffs' recitation of facts establishes that an actual controversy existed. However, when Plaintiffs' facts[1] are meshed with Defendants' wholly unrebutted facts, it is clear that no actual controversy existed at the time of Plaintiffs' filing, which was nothing more than an improper attempt to obtain a bargaining advantage. Additionally, Plaintiffs have alleged no new facts regarding SkyVision's or Robinson's lack of contacts with the state of Massachusetts, and therefore the Court should dismiss those Defendants.

---

[1] Plaintiffs' facts are accepted as true, albeit incomplete, for purposes of this motion only, and except to the extent those facts are plainly controverted.

## II. NO OBJECTIVELY REASONABLE APPREHENSION OF SUIT EXISTED, AND THUS THE COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION.

As an initial matter, Plaintiffs state that "the test for reasonable apprehension examines the *accused infringer's* state of mind, not the accusers intentions." Response at p. 7. To the extent Plaintiffs suggest this means the Court should look at Plaintiffs' state of mind, the statement is incorrect. As the case Plaintiffs cite for that propositions states, "[t]he reasonableness of a party's apprehension is judged using an objective standard. '[A]n examination of the totality of the circumstances must be made to determine whether there is a controversy.'" Vanguard Research, Inc. v. PEAT, Inc., 304 F.3d 1249, 1255 (Fed. Cir. 2002) (internal citations omitted). Thus, neither Plaintiffs nor Defendants subjective intent or state of mind is relevant, and the Court must look only to whether under the totality of the circumstances an objectively reasonable apprehension of suit existed. See e.g. id.; EMC Corp. v. Norand Corp., 89 F.3d 807, 811 (Fed. Cir. 1996).

The undisputed facts, when viewed in their totality as required, demonstrate that no objectively reasonable apprehension of suit existed. In the spring of 2004, Defendants learned that Plaintiffs were producing dental flossing devices that potentially infringed one or more of the Patents-in-Suit. Tipton Dec. at ¶ 4. That summer, Dr. Robinson, a dentist, contacted Plaintiffs to discuss the potential infringement issues raised by the dental flossing devices. Robinson Dec. at ¶ 8; Howley Dec. at ¶ 8. At that time, Mr. Howley, Plaintiffs' in-house patent counsel, stated that Plaintiffs preferred to avoid litigation and they sought a non-judicial resolution of any infringement issues. Robinson Dec. at ¶ 8. Plaintiffs and Dr. Robinson engaged in a handful of telephone calls, during at least one of which, according to Mr. Howley, Mr. Robinson said words to the effect that Water Pik had "set up a budget" for this issue. Howley Dec. at ¶ 13. Dr. Robinson did not send any cease and desist letters to Plaintiffs. Robinson Dec. at ¶ 9.

Thereafter, on October 1, 2004, negotiations began in earnest between Mr. Howley and Water Pik's in-house counsel, Rick Tipton. Howley Dec. at ¶¶ 14-16; Tipton Dec. at 9. Beginning in this first conversation, and continuing from time to time until Plaintiffs filed this lawsuit, the parties both stated their desire to resolve these matters without litigation. Tipton Dec. at ¶ 10. On subsequent telephone conversations, Mr. Tipton, who is not a patent attorney, included Mr. Lee Osman, Water Pik's outside patent counsel,[2] to discuss patent issues raised by Mr. Howley during negotiations. Howley Dec. at ¶ 17; Tipton Dec. at ¶ 11.

On October 18, Plaintiffs were advised that additional products might infringe the Patents-in-Suit. Howley Dec. at ¶ 18. On October 21, Mr. Howley reiterated Plaintiffs' commitment to a business, as opposed to litigation, resolution of the issues discussed. Tipton Dec. at ¶ 11. While it is unclear exactly when or in what context it was said, at some point Mr. Tipton allegedly said "that's where the suit comes in." Howley Dec. at ¶ 21. On November 2, Mr. Howley realized that Water Pik was relying on a family of patents. Tipton Dec. at ¶ 13; Howley Dec. at ¶ 23. On November 4 Mr. Howley advised Water Pik that Gillette was in no hurry and that Water Pik's damages could go back 6 years on royalties for infringement. Tipton Dec. at ¶ 14. Furthermore, the parties directly addressed the status of the negotiations and both parties agreed that they should continue with the negotiations. Tipton Dec. at ¶ 14.

Thereafter, on November 10 Mr. Howley indicated his position that the histories of the patent family, taken as a whole, provided Plaintiffs a good defense to infringement. Howley Dec. at ¶ 26. Of course, this had been the process all along: the parties continually raised new issues and openly discussed and resolved them. Tipton Dec. at ¶ 9. While the parties did not settle the dispute,

---

[2] Unlike Plaintiffs, Water Pik does not have in-house patent counsel. Mr. Osman is Water Pik's patent attorney, not a litigator, and thus Plaintiffs' reference to him as "outside litigation counsel" is erroneous. Tipton Dec. at ¶¶ 7, 11

neither party broke off negotiations or threatened litigation. After the call, in a show of Plaintiffs "good faith," Mr. Howley sent Water Pik Plaintiffs' Nielson Sales Data to permit evaluation of royalties proposals being discussed. Tipton Dec. at ¶ 15.

Less than 48 hours later, Plaintiffs filed this lawsuit. Tipton Dec. at ¶ 16.

The following week, in response to Mr. Tipton's statement that filing the lawsuit was a "low blow," Mr. Howley stated that Plaintiffs felt they had come up with a good argument against infringement, and therefore decided to file. Tipton Dec. at ¶ 17. Notably, Mr. Howley has not alleged that he told Mr. Tipton that he felt negotiations had broken down or that Water Pik was about to file suit.

After the November 10 meeting, Mr. Howley now states that further negotiations would have been fruitless and that negotiations ceased on that date. Howley Dec. at ¶ 28. Of course, Plaintiffs granted Defendants an extension of time to answer or otherwise respond so that negotiations could continue, and the parties did continue negotiations through early January. Tipton Dec. at ¶ 18. During these negotiations Plaintiffs reduced their licensing royalty offer, but nevertheless the negotiations continued. Id. These facts show an ongoing, open and non-confrontational negotiation ostensibly aimed at finding a non-judicial resolution.

Plaintiffs' rely on Oce-Office Systems, Inc. v. Eastman Kodak Co. in support of their assertion of an objectively reasonable apprehension of suit. In that case, Kodak sent threatening letters to Oce stating that Oce could either enter into a license agreement or cease selling its infringing products. Oce-Office Systems, Inc. v. Eastman Kodak Co., 805 F.Supp. 642, 644 (N.D. Ill. 1992). After months of negotiations, the plaintiff specifically terminated settlement discussions prior to filing suit. Id. at 645. Given defendant's previous assertions that it could either license the technology or cease and desist, and the express termination of negotiations, there was an objectively reasonable apprehension of suit. Id. at 646-47.

In this case, Water Pik never presented a "license, quit or we'll sue" ultimatum. On the contrary, at the time Plaintiffs filed suit, the parties were engaged in extensive and generally amicable negotiations. Tipton Dec. at ¶ 12. Furthermore, contrary to Plaintiffs' current position, neither party had broken off negotiations and no litigation was threatened. Instead, Plaintiffs filed suit and then continued negotiating, albeit lowering their offer in light of their new bargaining chip. Tipton Dec. at ¶ 18.

Accordingly, the evidence demonstrates that no objectively reasonable apprehension of being sued existed, and therefore this Court lacks subject matter jurisdiction.

### III. THIS COURT SHOULD DECLINE JURISDICTION IN LIGHT OF PLAINTIFFS' IMPROPER USE OF THE DECLARATORY JUDGMENT ACT AS A BARGAINING TOOL AND FORUM SHOPPING DEVICE.

Plaintiffs make no real attempt to distinguish the cases from this District directly addressing the effect of vindictive negotiating strategies on the court's exercise of discretion over declaratory judgment cases. Plaintiffs virtually disregard this Court's opinion in Waters Corp. v. Hewlett Packard Co., 999 F.Supp. 167 (D. Mass. 1998) (Gorton, J.) where the Court stated it was appropriate to decline jurisdiction where a party utilized a "judicial remedy to obtain a more favorable bargaining position." Id. at 174. Likewise, Plaintiffs' footnote treatment of Davox Corp. v. Digital Systems Int'l Inc., 846 F.Supp. 144 (D. Mass. 1993) merely asserts that the case is inapplicable because "here negotiations had reached an impasse...."

Plaintiffs' decision to essentially ignore those cases likely stems from the fact that they are indistinguishable from the instant case. Here, the parties were in the midst of ongoing negotiations when Plaintiffs filed suit. Tipton Dec. at ¶¶ 15-16. While it is true that Plaintiffs significantly reduced their royalty payment offer in the first negotiation session after filing this lawsuit, it remains undisputed that the parties continued negotiating. Tipton Dec. at ¶ 18. Accordingly, this Court should decline to exercise its jurisdiction in this case as Plaintiffs have misused the

Declaratory Judgment Act in an attempt to gain a bargaining advantage after stringing the Defendants along under the pretenses of "good faith" negotiations.

## IV. THE COURT PLAINLY LACKS JURISDICTION OVER ROBINSON AND SKYVISION

Plaintiffs rely on two purported contacts by which the Court has personal jurisdiction over Defendants Robinson and SkyVision. First, Plaintiffs point to a terminated licensing agreement from 1997 and second Plaintiffs attempt to attribute to Defendants Robinson and SkyVision contacts resulting from Water Pik's sales in Massachusetts. Neither of these alleged contacts provides the Court with personal jurisdiction.

Plaintiffs' argument that the 1997 Braun licensing agreement conveys specific personal jurisdiction fails for at least two reasons. First, that agreement does not cover the patent claims in this lawsuit, and thus does not grant specific jurisdiction. Specifically, the 1997 Braun agreement licensed certain rotational aspects of the '020 patent. This dispute, however, relates to non-rotational claims of the '020 patent. Conclusive evidence that the 1997 Braun agreement is not at issue can be found by an examination of Plaintiffs' complaint. Plaintiffs seek declarations that: A) neither Gillette nor its products infringes or has infringed any of the claims of the Patents-in-Suit under any subsection of 35 U.S.C. § 271; B) the claims of the Patents-in-Suit are invalid under 35 U.S.C. §§ 102, 103, and/or 112; and C) Gillette's Hummingbird, ProfessionalCare 8000 and attachments are not covered by Waterpik's licenses with Robinson.

Noticeably absent from this list is a declaration that Plaintiffs' products are covered by the 1997 Braun license agreement. Furthermore, a review of the Complaint reveals that Plaintiffs made no allegations that the 1997 Braun license agreement covered any of their current products. Plaintiffs have simply created this position in a late attempt to manufacture jurisdiction.

Second, the 1997 Braun license agreement cannot confer specific jurisdiction because it terminated by its own terms over 5 years ago as a result of Plaintiffs' failure to pay royalties. By the terms of the agreement, it automatically terminated if Braun failed to pay royalties for any one-year period. 1997 Braun License Agreement at ¶ XXX. Here, it is undisputed that Braun has not paid any royalties to Robinson or SkyVision since before 2000. Robinson Dec. at ¶ 5. The 1997 Braun agreement simply terminated and is of no moment in this case. Accordingly, Plaintiffs' claim that the 1997 Braun licensing agreement is a basis for specific personal jurisdiction fails.

Likewise, Plaintiffs' claim that Water Pik's sale of products within Massachusetts can be attributed to SkyVision or Robinson is erroneous. It is well settled that a licensee's contacts cannot be attributed to the licensor. Red Wing Shoe Company, Inc. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355, 1361 (Fed. Cir. 1998). In Red Wing, the court analyzed the effect an out-of-state licensee that sells products in-state has on the personal jurisdiction analysis relating to the licensor. The court held that "doing business with a company that does business in [the forum] is not the same as doing business in [the forum]. Indeed… the Supreme Court has made clear that contacts resulting from the unilateral activity of another party or third person are not attributable to the defendant.... [The] receipt of royalty income from its licensees for sales made in [the forum] is equally irrelevant." Red Wing Shoe Company, 148 F.3d at 1361.

Importantly, the Red Wing court also specifically rejected the plaintiff's claims that Akro Corp. v. Luker, 45 F.3d 1541 (Fed. Cir. 1995) stood for the proposition that a licensee's sales activity is a factor to consider in the personal jurisdiction analysis. The Red Wing court clarified that in Akro "the fact that the licensee had contacts with the forum state was relevant only to the extent that it showed the licensee to be a resident thereof." Id. at 1362. Instead, it was the licensor's activities of doing business with a resident licensee, granting it an exclusive license regarding the particular patent at issue, and sending cease and desist letters, which conferred jurisdiction. Id. at

1361-62. Thus, the Red Wing Court specifically rejected the plaintiff's contention that a licensee's activities are relevant in the personal jurisdiction analysis.

Likewise, Plaintiffs' reliance on Genetic Implant Systems, Inc. v. Core-Vent Corp., 123 F.3d 1455 (Fed. Cir. 1997) is misplaced. In that case the defendant, Core-Vent, manufactured certain products pursuant to patents it owned. Id. at 1457-58. Core-Vent initially developed a sales market within the state of Washington, including distribution networks, schools, and other educational programs. Id. at 1458. After the issuance of its patents, Core-Vent hired a distributor and directed that person to maintain and develop the sales network in Washington that Core-Vent had already created for the products it manufactured. Id.

In keeping with the Supreme Court's mandate that it is the defendant's own contacts, as opposed to those of other parties, that are important in the jurisdictional analysis, the court found that Core-Vent's acts within the state, coupled with its direction of a distributor in-state to maintain those contacts, showed that Core-Vent had directed its activity towards the state such that personal jurisdiction was appropriate. Id. at 1458-59.

Here, Robinson and SkyVision merely licensed patents to Water Pik. They neither direct nor control any aspect of Water Pik's marketing in Massachusetts, and neither of them has ever visited Massachusetts in regards to the Patents-in-Suit. See Robinson and SkyVision Responses to Interrogatories at Special Interrogatories 3, 6. Indeed, SkyVision has never sent a representative to Massachusetts, and Robinson has only been there once to attend a dental conference. Id. at 6. Furthermore, Water Pik is neither incorporated nor does it have its principal place of business in Massachusetts. Tipton Dec. at ¶ 2. Finally, the Defendants did not send cease and desist letters to Plaintiffs. Accordingly, this case falls under Red Wing, and the Court lacks personal jurisdiction over Defendants Robinson and SkyVision.

WHEREFORE, Defendants respectfully request that the Court dismiss the case for lack of subject matter jurisdiction, decline to exercise its jurisdiction pursuant to the Declaratory Judgments Act, dismiss Defendants SkyVision, Inc. and Robinson for lack of personal jurisdiction, or alternatively transfer this case pursuant to 28 U.S.C. § 1404(a) to the district of Colorado for consolidation with the action Defendants filed there.

Respectfully submitted,

*/s/ Patrick M. Curran, Jr.*
Thomas J. Sartory (BBO# 442500)
Patrick M. Curran, Jr. (BBO# 659322)
GOULSTON & STORRS, P.C.
400 Atlantic Ave.
Boston, MA 02110
Tel.   617-482-1776
Fax.   617-574-4112

Tucker K. Trautman (admitted *pro hac vice*)
Scott P. Sinor (admitted *pro hac vice*)
DORSEY & WHITNEY, LLP
370 Seventeenth St., Suite 4700
Denver, CO 80202
Tel.   303-629-3400
Fax   303-629-3450

ATTORNEYS FOR DEFENDANTS
SKYVISION INC., DANE
ROBINSON, AND WATER PIK
TECHNOLOGIES, INC.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above document was served by hand upon the attorney of record for each other party on March 7, 2005.

*/s/ Patrick M. Curran, Jr.*
Patrick M. Curran, Jr.