UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE GILLETTE COMPANY, BRAUN GMBH, and GILLETTE COMMERCIAL OPERATIONS NORTH AMERICA,<br><br>        Plaintiffs,<br><br>    v.<br><br>SKYVISION INC., DANE ROBINSON and WATER PIK TECHNOLOGIES, INC.,<br><br>        Defendants. | CIVIL ACTION NO. 04-12391 NMG |

**PLAINTIFFS' SUR-REPLY IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR TRANSFER VENUE AND REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL JURISDICTIONAL DISCOVERY**

Although it may not be apparent from Defendants' recent filings (Docket Nos. 24, 25) concerning their motion to dismiss, the relevant facts are not in dispute. And the undisputed facts should be dispositive of Defendants' motion. Critically, there is no dispute that:

- This Court has personal jurisdiction over Water Pik;

- Defendants repeatedly alleged that Gillette infringed the patents-in-suit and even threatened to sue Gillette;

- Robinson and Sky Vision are parties to a license agreement with Gillette, which covers one of the patents-in-suit and requires that any disputes be governed by Massachusetts law;

- Robinson and Sky Vision are also parties to a license agreement with Water Pik, which covers the patents-in-suit and provides Robinson and Sky Vision with royalties from Water Pik's sales in Massachusetts;

- Defendants refused to produce discovery relating to Water Pik's sales in Massachusetts or Robinson and Sky Vision's royalties based on those sales; and

- Nothing bars this case from going forward against Water Pik.

An actual controversy existed and this Court should exercise jurisdiction over all of the parties to resolve this controversy once and for all.

I. **THE COURT SHOULD DENY THE MOTION TO DISMISS BECAUSE DEFENDANTS' UNDISPUTED INFRINGEMENT ALLEGATIONS AND THREAT OF SUIT CREATED A REASONABLE APPREHENSION OF SUIT**

Defendants effectively concede that this Court may exercise declaratory judgment jurisdiction because they expressly charged Gillette with infringement and threatened it with litigation. These undisputed facts demonstrate that an actual controversy existed and that jurisdiction under the Declaratory Judgment Act is proper. *See Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 736 (Fed. Cir. 1988) ("If defendant has expressly charged a current activity of the plaintiff as an infringement, there is clearly an actual controversy, certainty has rendered apprehension irrelevant, and one need say no more."); *C.R. Bard, Inc. v. Schwartz*, 716 F.2d 874, 879 (Fed.Cir.1983).

Defendants' only response to these dispositive facts is to dispute that negotiations had reached an impasse. Defendants contend that negotiations were ongoing because "Water Pik never presented a 'license, quit or we'll sue' ultimatum." But this contention is flatly contradicted by Mr. Tipton's declaration: "I explained that if Plaintiffs were not serious about exploring the licensing option, Water Pik was willing to consider other legal avenues." Tipton Decl. at ¶ 11 (*see* Docket No. 8). Moreover, Defendants' position is untenable. If accepted, it would mean that Defendants can make countless infringement allegations and threaten to sue without any consequences so long as they believe that negotiations are ongoing. The Declaratory Judgment Act should not be read so narrowly as to require Plaintiffs to endure these allegations and threats without any recourse.

Nor have defendants provided a colorable justification for this Court to decline to exercise jurisdiction. Instead, Defendants repeat the unfounded allegation that Gillette used this litigation to obtain some undefined bargaining advantage by agreeing to continue negotiations

2

after filing suit.  But this suggestion fails to acknowledge a critical fact: Defendants, not Gillette, requested that the negotiations continue.  Gillette's agreement to continue settlement discussions should not be factor in determining whether to exercise declaratory judgment jurisdiction.  Indeed, the position Defendants advance would discourage settlement negotiations and undermine the purpose of the Declaratory Judgment Act.

**II.  THIS COURT HAS PERSONAL JURISDICTION OVER SKY VISION AND ROBINSON, AND SHOULD PRESUME THAT ADDITIONAL EVIDENCE SUPPORTS JURISDICTION BECAUSE DEFENDANTS REFUSED TO PRODUCE RELEVANT JURISDICTIONAL DISCOVERY**

It is ironic that Defendants' argue on the one hand that "Plaintiffs have alleged no new facts regarding Sky Vision's or Robinson's lack of contacts with the state of Massachusetts" and on the other hand have refused to produce jurisdictional discovery.  Nevertheless, Robinson and Sky Vision's (collectively "Robinson") contacts with Massachusetts are beyond dispute.  Both have had substantial contacts with Massachusetts over the past eight years, including (1) negotiating and entering into license agreements with both Gillette and Water Pik, (2) alleging that Gillette infringed the very same patent it previously licensed and then engaging in licensing negotiations, and (3) receiving royalties from both Gillette and Water Pik from sales made in Massachusetts.

The 1997 Agreement between Robinson and Gillette clearly establishes Robinson's contacts with Massachusetts, including an express agreement that any disputes concerning the agreement would be governed by Massachusetts law.  It is not surprising that Defendants now go to great lengths to distance themselves from the 1997 Agreement, which covers one of the patents-in-suit.  But in Defendants' opening brief, Robinson plainly understood the potentially determinative effect of the 1997 Agreement.  Indeed, Robinson goes so far as to say that no product manufactured by Braun infringes the '020 patent: "To my knowledge, Braun ceased manufacturing products practicing the '020 patent prior to 2000." *See* Robinson Decl. at ¶¶ 4-5 (Docket No. 8).  Defendants' new argument that the 1997 Agreement was terminated is unsupported and therefore is entitled to no weight.  *See Gold v. Wolpert*, 876 F.2d 1327, 1331

3

n.6 (7th Cir. 1989) ("It is well settled that new arguments cannot be made for the first time in reply. This goes for new facts too."). Notably, Robinson never stated in his declaration that the agreement was terminated. Nor have Defendants produced a termination letter or any other documents demonstrating that the license agreement was terminated.[1]

Personal jurisdiction exists in this case for the reasons set forth in *Genetic Implant Sys., Inc. v. Core-Vent Corp.,* 123 F.3d 1455 (Fed. Cir. 1997). As in *Genetic Implant,* here, Robinson had substantial previous contacts with the forum, coupled with cease-and-desist communications directed to the forum (directly, and through their agent Richard Tipton), and contact with a resident of the forum (Water Pik). The legal precedent is clear that cease-and-desist communications coupled with contact with an exclusive licensee in the forum are sufficient to support personal jurisdiction. *Id.* at 1459; *see also Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.,* 148 F.3d 1355, 1362 (Fed. Cir. 1998); *Akro Corp. v. Luker,* 45 F.3d 1541, 1548-49 (Fed. Cir. 1995).

Defendants' attempt to distinguish *Genetic Impant* fails. They argue that that case involved a distributor, not a licensee. But the court in *Genetic Impant* explicitly recognized that the distinction between a distributor and a licensee is immaterial. *See Genetic Implant,* 123 F.3d at 1458 ("The appointment of a distributor to sell a product covered by a patent is analogous to a grant of a patent license."). In *Genetic Implant*, the distributor was deemed a resident of the forum state because of its extensive contacts with the state. *See id.* at 1459 ("[T]he fact that Dentsply is not a Washington corporation is not determinative. Dentsply is present in Washington in the sense that it promotes and sells Core-Vent's patented products in the state."). Similarly, Water Pik should be deemed a resident of Massachusetts, for this jurisdictional analysis, based on its extensive contacts with Massachusetts. *Cf.* 28 U.S.C. § 1391(c) (providing, for purposes of venue, that a corporation is a resident of any judicial district in which it is subject to personal jurisdiction). Robinson's contacts with Water Pik, coupled with his previous contact

---

[1] The issue of whether the license is still in effect and what it covers will likely have to be resolved during this litigation and Massachusetts law will govern the terms of the agreement.

4

with the forum, and cease-and-desist communications directed to the forum, are more than sufficient to confer personal jurisdiction. *See* Opposition to Defendants' Motion to Dismiss or for Change of Venue (Docket No.14) at 14-18.

Finally, Defendants' reliance on *Red Wing* supports Plaintiffs' position. In *Red Wing,* the Federal Circuit held that a patentee's contacts with a "resident" of the forum state *are* sufficient to justify the exercise of personal jurisdiction. 148 F.3d at 1362 (citing *Akro,* 45 F.3d at 1549). *Red Wing*'s requirement that the licensee be a "resident" is equivalent to *Genetic Impant*'s finding that the licensee need only be transacting substantial business in-state.

In the alternative, this Court should either presume that Water Pik is a resident of Massachusetts for jurisdictional purposes because Water Pik refused to produce relevant jurisdictional discovery, or grant Plaintiffs' motion to compel jurisdictional discovery.

For the foregoing reasons, Plaintiffs respectfully request that this Court DENY Defendants' Motion to Dismiss (Docket No. 7) and ALLOW Plaintiffs' Motion to Compel Jurisdictional Discovery (Docket No. 18).

Dated:  March 30, 2005                     FISH & RICHARDSON P.C.

By:  /s/ Craig R. Smith
Alan D. Smith, (BBO# 629,034)
Craig R. Smith, (BBO# 636,723)
Thomas A. Brown (BBO# 657,715)
Fish & Richardson P.C.
225 Franklin Street
Boston, MA 02110
(617) 542-5070 Telephone
(617) 542-8906 Facsimile

Attorneys for Plaintiffs
THE GILLETTE COMPANY,
BRAUN GMBH, and GILLETTE
COMMERCIAL OPERATIONS NORTH
AMERICA

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by email on March 30, 2005.

                                         /s/ Craig R. Smith
                                         Craig R. Smith